Yeung Mung WENG, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

No. 1780, Docket 96–2918.

United States Court of Appeals, Second Circuit

Submitted July 16, 1997.

Decided Feb. 24, 1998.

Yeung Mung Weng, Pro Se, Ray Brook, NY, for Plaintiff–Appellant.

Zachary W. Carter, United States Attorney for the Eastern District of New York, Brooklyn, NY (David C. James, Leonard Lato, Assistant United States Attorneys, of counsel), for Defendant–Appellee.

Before WINTER, Chief Judge, JACOBS and LEVAL, Circuit Judges.

LEVAL, Circuit Judge:

Yeung Mung Weng, acting *pro se* and *in forma pauperis,* appeals from an order of the United States District Court for the Eastern District of New York (Dearie, J.), dismissing his civil complaint for the return of personal property purportedly forfeited to the government in connection with his conviction on narcotics charges. Although Weng claimed to have received no notice of the government's intent to forfeit his property, the district court found that a mailing by the Federal Bureau of Investigation ("FBI") to a prison where Weng was believed to be incarcerated satisfied the government's obligation to give notice. We conclude that at least when a property owner is in federal custody on the very charges that gave rise to the seizure of his property, absent special justifying circumstances, notice of forfeiture sent to him at the federal institution will not be deemed sufficient unless actually received by him. We therefore vacate the judgment and remand.

### Background

On November 8, 1990, Weng was arrested by agents of the FBI at his residence in Queens, New York, on narcotics charges. He was taken into federal custody. Charges were instituted against him in the United States District Court for the Eastern District of New York, and on January 22, 1991, he was convicted on his guilty plea. *See Weng v. United States,* No. 95–CV–4295, 1996 WL

480851 (E.D.N.Y. Aug.15, 1996) (habeas action). Weng remained in federal custody serving his sentence on these charges throughout the time of the events pertinent to this appeal.

At the time of Weng's arrest, FBI agents seized jewelry valued at $19,150 and $65,900 in currency from his residence. Under the authority of 21 U.S.C. § 881, the FBI subsequently initiated forfeiture proceedings against the currency and the jewelry, utilizing the administrative procedure provided by 19 U.S.C. § 1607. An FBI official prepared and sent two written Notices of Intent to Forfeit the property, one for the currency and one for the jewelry. The Notice of Intent to Forfeit the currency ("the currency notice") was mailed on January 25, 1991. The Notice of Intent to Forfeit the jewelry ("the jewelry notice") was mailed on March 4, 1991. These notices were sent by certified mail both to appellant's last known address and to the Metropolitan Correctional Center ("MCC"), a federal detention facility in New York City. As to why the notices were sent to the MCC, the government's papers in support of its motion to dismiss asserted conclusorily that Weng was incarcerated there. No substantiation was given for that assertion, and papers submitted by Weng to this court during the appeal suggest that that assertion may have been inaccurate, at least in the case of the jewelry notice. The copies mailed to Weng's last known address were returned undelivered. The copy of the currency notice mailed to the MCC, according to the certified mail receipt, was received by the MCC on January 29, 1991. As to the jewelry notice, the MCC received its copy on March 8, 1991. In addition, the government published the notices once per week for three successive weeks in newspapers of general circulation. No claims were made for either the currency or the jewelry. On March 22, 1991 and May 31, 1991 respectively, the FBI declared the currency and the jewelry administratively forfeited pursuant to 19 U.S.C. § 1609.

In 1995, Weng instituted this action by filing a complaint, in the form of a letter written in Chinese and translated into English, in the United States District Court for the Eastern District of New York, seeking the return of his property.[1] The complaint asserted that the property, for which he had received no accounting from the FBI, was purely personal and unrelated to drug dealings. By order dated January 25, 1995, the district court (Dearie, J.) ordered the government "to show cause by the filing of a detailed written response why the relief should not be granted" and referred the case to Magistrate Judge John L. Caden. Eighteen months later, in June 1996, the government filed a one-page letter by way of response, stating that Weng had conceded, in papers filed in another proceeding, that the government had successfully forfeited the property. After being informed by the magistrate judge that this letter was not a sufficient response, the government moved to dismiss Weng's complaint. The government argued that the district court lacked subject matter jurisdiction to review the forfeiture because Weng had received the constitutionally required notice of the government's intent to forfeit, and the forfeiture had been perfected. It argued that "due process does not require that the claimant receive actual notice of a forfeiture proceeding, but rather, that the Government act reasonably in selecting and employing a means likely to inform the claimant of the proceeding."

In a Report and Recommendation dated October 2, 1996, Magistrate Judge Caden adopted the government's view that the court was without jurisdiction to review the forfeiture. Noting that Weng "does not appear to dispute the fact that he was present at the MCC when the notice was received," the magistrate judge concluded that the government had acted reasonably in attempting to

---

1. Although the parties refer to Weng's action as a motion pursuant to Fed.R.Crim.P. 41(e), because the criminal proceedings against Weng were completed prior to the filing of the 1995 complaint, we treat his claim as a civil action for the recovery of the seized property. *See Onwubiko v.*

*United States,* 969 F.2d 1392, 1397 (2d Cir.1992) ("Where criminal proceedings against the movant have already been completed, a district court should treat a rule 41(e) motion as a civil complaint.").

notify Weng of the forfeiture of his property by mailing notice to the MCC.[2]

By Order dated October 17, 1996, Judge Dearie adopted the magistrate judge's report in its entirety, noting that Weng had failed to file objections within the prescribed 10 day period. However, on October 15—in the interim between the magistrate judge's report and the district court's ruling—the court received Weng's answer to the government's motion to dismiss and objections to the magistrate judge's ruling. (Weng contends both were mailed within 10 days of the magistrate judge's report.) Weng's answering affidavit stated that he had never received notice of the intended forfeitures. He further stated that he was transferred several times during 1991 between the MCC and the Federal Correctional Institution at Otisville, New York ("FCI Otisville") and that, accordingly, "it [is] very questionable whether [he] was in [the] MCC at the[ ] particular dates in which the MCC received the notices." In response to the magistrate judge's report,[3] Weng objected, *inter alia*, to the magistrate judge's finding that Weng did not dispute that he was present at the MCC when the notices were received. Because of the transfers between the MCC and FCI Otisville, Weng reiterated, it was *"very* questionable" whether he was in fact at MCC on the relevant dates. Information apparently from the Bureau of Prisons submitted by Weng on his appeal shows that although he was at the MCC when the currency notice was delivered there on January 29, 1991, he was not at the MCC but at FCI Otisville on March 8, 1991 when the jewelry notice was delivered to the MCC.

The district court, by Memorandum and Order dated November 11, 1996, reaffirmed its October 17 order. Acknowledging Weng's assertion that he had been transferred between the MCC and FCI Otisville, the court nevertheless found that Weng had "fail[ed] to raise any possibility that the government had information indicating that in 1991, plaintiff was anywhere other than the MCC." In any event, the court concluded, "due process is satisfied even if the claimant does not receive notice due to a prison transfer."[4]

*Discussion*

■ Pursuant to 21 U.S.C. § 881, the United States is authorized to forfeit the proceeds of drug transactions by civil proceedings. *See generally, Boero v. Drug Enforcement Admin.,* 111 F.3d 301, 304 (2d Cir.1997); *Torres v. $36,256.80 U.S. Currency,* 25 F.3d 1154, 1155 (2d Cir.1994). For property valued at $500,000 or less, the government may employ an administrative process, rather than the more exacting route of judicial forfeiture. *See* 19 U.S.C. § 1607; 21 U.S.C. § 881(d); 21 C.F.R. §§ 1316.75–77; *Boero,* 111 F.3d at 304. Such property "may be forfeited by the seizing agency if proper notice of the seizure and intent to forfeit is given and no person files a claim to the property, accompanied by a cost bond, within the allotted time period." *United States v. Idowu,* 74 F.3d 387, 394 (2d Cir.) (citing 19 U.S.C. § 1609), *cert. denied,* 517 U.S. 1239, 116 S.Ct. 1888, 135 L.Ed.2d 182 (1996). "Where no person files a claim or bond within the statutory period, the agency is autho-

2. The magistrate judge also noted that the fact the notices were written in English, and not in Weng's primary language, was not violative of due process. *See Toure v. United States,* 24 F.3d 444, 446 (2d Cir.1994).

3. In his objections to the magistrate judge's Report and Recommendation, Weng stated that his response to the government's motion to dismiss had been delayed due to Weng's transfer between prisons and the need to find a fellow inmate to assist in the preparation of the papers. Weng also stated that he received the magistrate judge's report on October 8, 1996, the day after Weng mailed his opposition to the government's motion to dismiss.

4. Weng filed his notice of appeal to this court on October 25, 1996, after the district court's initial order but before its November 11 order reaffirming the initial order and before the entry of judgment. Weng argues that the filing of his notice of appeal divested the district court of jurisdiction and therefore the November 11 order is of no effect. *See Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 378–79, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985). Because we find that the district court's dismissal was premised upon an incorrect view of the law and that a remand for further proceedings is necessary, the district court will have the opportunity to take whatever steps may be necessary properly to effect judgment.

rized to declare the property forfeited." *Id.* (citing 19 U.S.C. § 1609). ·

■ "The overwhelming weight of authority supports the position that a federal court lacks jurisdiction to review the merits of administrative forfeiture decisions...." *United States v. One 1987 Jeep Wrangler,* 972 F.2d 472, 480 (2d Cir.1992). "[N]evertheless, an exception to this general rule lies if the property is taken accidentally, fraudulently, or improperly. Put another way, if an administrative forfeiture is procedurally deficient, the court has jurisdiction to correct the deficiency." *Onwubiko,* 969 F.2d at 1398 (citation omitted). Accordingly, federal courts have jurisdiction to determine whether the government provided legally adequate notice of forfeiture. *See Boero,* 111 F.3d at 305; *Torres,* 25 F.3d at 1160–61.

■ "[N]otice [must be] reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.... [W]hen notice is a person's due ... [t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt...." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314–15, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (citations omitted).

The magistrate judge and district court believed that the FBI had provided Weng with adequate notice because it sent Notices of Intent to the institution where it presumed he was confined. We disagree.

We note that the government furnished no evidence in support of its assertion that Weng was incarcerated at the MCC when the notices were sent there. (And as noted above, Weng was apparently not at the MCC when the jewelry notice was sent there.) Courts have several times commented on the obligation on government, when it seeks to give notice of forfeiture to one it knows to be in its custody, to take the trouble to ascertain the place of confinement. In· *Robinson v. Hanrahan,* 409 U.S. 38, 40, 93 S.Ct. 30, 31–32, 34 L.Ed.2d 47 (1972), the Supreme Court invalidated a forfeiture notice mailed to the property owner's home address while the owner was in custody awaiting trial throughout the relevant time period. . "[T]he State knew that [the owner] was not at the address to which the notice was mailed and, moreover, knew also that [the owner] could not get to that address since he was at that very time confined in the Cook County jail," the Court stated, and therefore "it cannot be said that the State made any effort to provide notice which was 'reasonably calculated' to apprise [the owner] of the pendency of the forfeiture proceedings." *Id.*

· Similarly, in *Torres* we held that a notice sent by the Drug Enforcement Agency (DEA) to the last known place of incarceration, the Chester County Prison, was inadequate. 25 F.3d at 1161. Although we noted that the DEA's letter was returned undelivered and with a notation that the property owner, Rafael Torres, was "Not at Chester County Prison," we further emphasized that:

if the DEA had desired to give Rafael actual notification, a simple call to the Bureau of Prisons would have sufficed to reveal where Rafael was serving his sentence. The DEA's assertion that "No other location of incarceration for Mr. Torres was known to DEA" may have been true, but this was easily curable. Rafael was residing at a place of ·the government's choosing, not his own.

*Id; see also Torres,* 25 F.3d at 1162 (Pollack, J., concurring in the result) ("When the government seeks forfeiture of property of a person who is at the time in government custody, the agency that initiates the forfeiture must find out in what government facility the person is being held and send the notice to the right place."); *Boero,* 111 F.3d at 307 (noting, on facts similar to those in *Torres,* that "Boero was a prisoner in [state] custody, having been transferred to his place of incarceration directly from a federal facility, and notice could easily have been given to him; the notice was indisputably inadequate and the district court has found (as the DEA conceded) that the DEA was responsible for the failure of notice."); *United States v. Giraldo,* 45 F.3d 509, 511 (1st Cir.1995) ("[W]here a claimant is 'residing at a place of the government's choosing,' the seizing agency must take steps to locate the claimant in

order to satisfy due process.") (quoting *Torres*, 25 F.3d at 1161). In this same spirit, we again recently noted that "we continue to be mystified as to why an agency of the United States Department of Justice seeking to give constitutionally adequate notice could not determine the current whereabouts of a person who is in the custody of another agency of the same Department." *Bye v. United States*, 105 F.3d 856, 857 (2d Cir.1997).

■ We consider it unreasonable for the forfeiting agency to fail to ascertain the location of one it knows to be in government custody. This is particularly true in a case like Weng's, where the agency processing the forfeiture was involved in prosecuting the claimant and the forfeiture is justified by the very facts that furnished the basis of the prosecution. Absent special justifying circumstances, the least that can be asked of a federal government agency seeking forfeiture of the property of a federal detainee is that it determine where the claimant is detained and send the notice to the right institution.[5] An agency "desirous of actually informing the absentee," *Mullane*, 339 U.S. at 315, 70 S.Ct. at 657, would not reasonably settle for less. *Cf. Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983) ("Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party ... if its name and address are reasonably ascertainable."); *United States v. Woodall*, 12 F.3d 791, 794 (8th Cir.1993) ("When the government has actual knowledge of an interested party's whereabouts at the time forfeiture is commenced, failure to direct the statutorily required personal notice to that address cannot be considered compliance with either the statute or minimum due process standards."). Accordingly, if Weng was at FCI Otisville when the jewelry notice was sent to the MCC, the jewelry notice was inadequate on this basis alone.

■ The issue of the currency notice, however, requires that we go farther. The papers before the district court assert that the currency notice was sent by certified mail to Weng at the MCC. Weng does not dispute that it was received by the MCC at a time when Weng was in fact detained there. Nonetheless, according to Weng's claim, it was never delivered to him. In the government's view, the efforts of the FBI to serve notice were reasonably calculated to inform Weng of the forfeiture; when the requisite time passed without the filing of a claim, the forfeiture became perfected, and, regardless whether the notice in fact reached Weng, no court could thereafter inquire whether the government was entitled to take the property. We do not agree that a federal agency's mailing of a notice of forfeiture to a federal correctional institution where the property owner is detained constitutes adequate notification of the forfeiture if the notice is not in fact delivered to the prisoner-owner.

The Supreme Court made clear in *Mullane* that the type of notification required varies with a number of factors including the nature of the interests involved, the likelihood that others similarly situated will protect a property owner's interests, and the reasonableness of imposing more onerous requirements on the entity obligated to give notice. 339 U.S. at 314–20, 70 S.Ct. at 657–60.

In this type of case the interest of the property owner is potentially enormous. The administrative procedure permits the forfeiture of money or property up to $500,000. While investigative agencies may assume that money or valuables found in possession of one charged with violation of the narcotics laws are proceeds of illegal dealing, that is not necessarily the case. A person who violates the narcotics laws might well possess valuable property that is unrelated to narcotics. The forfeiture of such property may be a matter of great importance to him. And without the owner even being made aware of, or having a practical opportunity to challenge, the forfeiture, its lawfulness is difficult to justify. In these circumstances, furthermore, no one but the owner can be relied on to protect the owner's interest. Unlike

---

**5.** As we held in *Bye*, 105 F.3d at 857, due process is also satisfied, in appropriate circumstances, by giving notice to a property owner's attorney.

the facts of *Mullane* where a large class of persons might have advanced objections shared by the owner, *see id.* at 318–19, 70 S.Ct. at 659–60, no one will come forward to protect the legitimate interests of the owner by objecting to forfeiture of improperly seized property.

Finally, at least where the owner is in federal custody on the very charges that justify a federal agency in seeking the forfeiture, there is no undue hardship to the agency in insuring that the owner-prisoner actually receive the legally required notification. When such an investigating agency wishes to secure such a prisoner's cooperation in testifying against some important wrongdoer, it has no difficulty delivering the message in a manner that insures receipt. On the other hand, when the agency employs the administrative procedure to forfeit up to a half million dollars of the prisoner's property, it is content to use the mails, with no assurance that the notice will reach the addressee.[6] For two reasons, this method of giving notice is suspect. First, as a prisoner, the owner is unable to insure that he will receive the notice once the post office has delivered it to the institution. The owner is entirely dependant on the institution to deliver his mail to him. Second, because the owner's jailor—the Bureau of Prisons—is part of the same government, and in many cases part of the same department of government, as the agency seeking to give notice, the forfeiting agent can in all probability easily secure the Bureau's cooperation in assuring that the notice will be delivered to the owner and that a reliable record of the delivery will be created.

In view of these circumstances, we think that the mere mailing of notice—even with a required return receipt signed not by the addressee but by the institution—does not satisfy the requirement of *Mullane* that the means of giving notice "be such as one desirous of actually informing [the owner] might reasonably adopt." 339 U.S. at 315, 70 S.Ct. at 657. At least where a federal agency is making administrative forfeiture and the owner is a prisoner in federal custody on the

charges that give rise to the forfeiture, we hold that such mailing of a notice to the custodial institution is not adequate unless the notice is in fact delivered to the intended recipient.

The First Circuit and the Eighth have reached the same conclusion. *See Woodall,* 12 F.3d at 794–95 ("[I]f the government is incarcerating or prosecuting the property owner when it elects to impose the additional burden of defending a forfeiture proceeding, fundamental fairness surely requires that either the defendant or his counsel receive actual notice of the agency's intent to forfeit in time to decide whether to compel the agency to proceed by judicial condemnation."); *Giraldo,* 45 F.3d at 511 (same). We find it well-justified.

Accordingly, we vacate the judgment of the district court and remand to permit the determination whether Weng in fact received the notices of forfeiture that were mailed to him in care of the MCC.

### *Conclusion*

Judgment vacated. The matter is remanded for further findings.

---

6. Use of a form of mailing that requires a return receipt does not furnish reliable assurance of delivery to the owner if the receipt is to be signed not by the person but by the institution.