In the
United States Court of Appeals
For the Seventh Circuit

No. 98-3940

Edward Krecioch,

Plaintiff-Appellant,

v.

United States of America, Drug Enforcement
Administration, Unknown Agents of the Drug
Enforcement Administration and United States
Department of Justice,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 1121--James B. Zagel, Judge.

Argued April 21, 2000--Decided July 20, 2000

Before Bauer, Kanne and Evans, Circuit Judges.

Kanne, Circuit Judge.  The Drug Enforcement
Administration ("DEA") claimed several
automobiles, $71,334 in cash and three handguns
from Edward Krecioch through administrative
forfeitures after he was arrested for drug
trafficking in 1992. Acting pursuant to 19 U.S.C.
sec. 1607, the DEA mailed written notices of the
administrative forfeitures by certified mail to
Krecioch's residence. Two days later, Krecioch
pleaded guilty and his bond was revoked, sending
him to jail before the notices arrived at his
home. Krecioch filed a collateral attack on the
administrative forfeitures in district court and
argued that the DEA deprived him of due process
by failing to provide actual notice of the
pending proceedings when he was jailed. The
district court granted summary judgment for the
DEA, finding that the DEA discharged its due
process obligations. We agree with respect to all
the forfeitures except that of Krecioch's
weapons.

I.  History

The DEA monitored Krecioch and William Truhlar's
cocaine trafficking operation for more than a
year before arresting Truhlar on July 8, 1992.
That day, in Krecioch's presence, the DEA seized

$2,150 in cash, a 1989 Lincoln limousine and a 1988 Chevrolet Blazer from the operation's main place of business, Billy T's Limousine Service in Palos Hills, Illinois. The DEA later that day seized two kilograms of cocaine, marijuana, assorted drug paraphernalia, three handguns and $69,184 from Krecioch's residence. The DEA arrested Krecioch on July 13, 1992, and he was released on $100,000 bond.

In August, the DEA initiated administrative forfeiture actions against the seized property. Finding sufficient connection under 21 U.S.C. sec. 881 between the property and drug-related crimes, the federal government exercised its authority to seize "[a]ll moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance," "[a]ll . . . vehicles . . . used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment" of a controlled substance and "any firearm . . . used or intended to be used to facilitate the transportation, sale, receipt, possession, or concealment" of a controlled substance. 21 U.S.C. sec. 881(4), (6), (11). Each of the seized properties in this case was valued at $500,000 or less, so 19 U.S.C. sec. 1607 permitted the government to opt for administrative forfeiture instead of judicial forfeiture proceedings in district court. Although it authorizes the government to execute forfeiture actions outside of court supervision, 19 U.S.C. sec. 1607 also requires that "[w]ritten notice of seizure together with information on the applicable procedures shall be sent to each party who appears to have an interest in the seized article." 19 U.S.C. sec. 1607. Any potential claimant is then entitled to file for remission or mitigation of the forfeitures under 19 U.S.C. sec. 1618, or file a claim in district court under 19 U.S.C. sec. 1608 to contest the forfeitures through judicial proceedings.

On August 10, 1992, the DEA sent by certified mail to Krecioch's home address written notices of the forfeiture actions against the 1989 Lincoln limousine, 1988 Chevrolet Blazer and $71,334 cash. His sister Camille Krecioch signed the return receipts on August 14 and 15 but apparently did not convey the notices to Krecioch or inform him of the forfeiture proceedings. The DEA also mailed the notices for the 1989 Lincoln limousine and $2,150 cash to Krecioch's business address, where Truhlar's wife signed the return receipts. In addition, the DEA began publishing the notices of forfeitures in the national newspaper USA Today for three consecutive weeks as required by 21 C.F.R. sec. 1316.75.

On August 10, the day of the mailings, Krecioch was free on bond and living at home. Krecioch had been offered a plea bargain but never signed the proffered plea agreement. It was not until his hearing on August 12, 1992, that Krecioch agreed to plead guilty to drug-trafficking and firearms charges. The district court revoked bond, sending him immediately to jail, and later sentenced Krecioch to ten years imprisonment and five years supervised release. On September 2, 1992, the DEA seized a 1984 Chevrolet Corvette from Krecioch's residence and mailed written notice of the seizure to Krecioch both at his residence and at the Chicago Metropolitan Correctional Center ("MCC"), where he was incarcerated. In addition, on September 8, 1992, the DEA sent written notice for the forfeiture action against the weapons to Krecioch's home address, where his mother signed the return receipt, but not to the MCC.

Krecioch did not file a claim under 19 U.S.C. sec. 1608, which would have required the DEA to refer the forfeiture actions to the United States Attorney's Office for judicial forfeiture proceedings under 19 U.S.C. sec. 1603(b). As a result, the DEA issued declarations of administrative forfeiture and claimed title to the seized property under 19 U.S.C. sec. 1609(b). Five years later, Krecioch sued in district court and mounted a collateral attack on the administrative forfeitures, arguing that the forfeitures were ineffective because the DEA had failed to give him adequate notice required by the Due Process Clause of the Fifth Amendment. The district court granted summary judgment for the government, and Krecioch now appeals.

II.  Analysis

Krecioch argues that the DEA violated his due process rights by failing to provide actual notice of the administrative forfeitures. Krecioch does not dispute that notice via certified mail is typically sufficient for due process purposes, see, e.g., Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 800 (1983), and he does not challenge the notice, mailed to him in jail, for the Corvette. Krecioch challenges the constitutional adequacy of the written notices sent to his residence regarding only the seizures of the 1989 Lincoln limousine, 1988 Chevrolet Blazer, cash and weapons.

With respect to the notices for the two automobiles and cash, Krecioch argues the DEA knew or should have known on August 10, 1992, when it mailed the written notices, that the notices would arrive at his residence after he had been jailed and that he would not receive them. Krecioch contends that the DEA officer who

appeared at his hearing on August 12 should have served him at the hearing. With respect to the notice for the weapons, Krecioch asserts that the written notice mailed to his residence was inadequate because the DEA knew at the time of mailing on September 8, 1992, that he had been jailed and would not receive it. Krecioch contends that the DEA notices of the forfeiture actions against his property thereby violated due process and the forfeitures should be overturned. Although the DEA executed the forfeitures through administrative rather than judicial proceedings, federal courts possess jurisdiction to review collateral due process attacks on administrative forfeitures, see Weng v. United States, 137 F.3d 709, 713 (2d Cir. 1998); United States v. Woodall, 12 F.3d 791, 793 (8th Cir. 1993), and we review de novo the district court's grant of summary judgment. See Sarit v. U.S. Drug Enforcement Admin., 987 F.2d 10, 13 (1st Cir. 1993).

The Supreme Court announced the standard for due process in Mullane v. Central Hanover Bank & Trust, Co., 339 U.S. 306, 314 (1950): "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." The operative question is whether notice was adequate at the time that the notice was sent, and due process is not satisfied "if the notifying party knew or had reason to know that notice would be ineffective." Sarit, 987 F.2d at 14. However, due process does not require actual notice, so long as the government "acted reasonably in selecting means likely to inform the persons affected." Weigner v. City of New York, 852 F.2d 646, 649 (2d Cir. 1988).

Notice of forfeiture by mail to the claimant's residence is inadequate if the government knew that the claimant would not receive it. See Small v. United States, 136 F.3d 1334, 1338 (D.C. Cir. 1998); United States v. Rodgers, 108 F.3d 1247, 1252-54 (10th Cir. 1997); Woodall, 12 F.3d at 794; cf. Schluga v. City of Milwaukee, 101 F.3d 60, 63 (7th Cir. 1996). When the government mails a notice to an address at which it knows the claimant not to be, the notice typically violates due process because it is not reasonably calculated to apprise the claimant of the action. See United States v. Giraldo, 45 F.3d 509, 511 (1st Cir. 1995); Woodall, 12 F.3d at 794. If it does nothing more, the government knows for fact that the claimant will never receive notice. When the government does not know or reasonably cannot discover the claimant's whereabouts, the

government may satisfy due process with mere publication of a forfeiture notice. See Mullane, 339 U.S. at 317-19. However, when the claimant is incarcerated or in government custody, the ease of learning the claimant's location makes it in most cases "unreasonable for the forfeiting agency to fail to ascertain the location of one it knows to be in government custody." Weng, 137 F.3d at 714. Thus, the government violates due process when it purposely mails notice of forfeiture to the claimant's residence knowing that the claimant is incarcerated or in federal custody. See Robinson v. Hanrahan, 409 U.S. 38, 40 (1972); Giraldo, 45 F.3d at 511; Torres v. $36,256.80 U.S. Currency, 25 F.3d 1154, 1160-61 (2d Cir. 1994).

Krecioch was not incarcerated or in federal custody until after the DEA mailed the forfeiture notices for the cash and the two automobiles to his home, and the DEA could not have known that Krecioch would decide to plead guilty two days after the mailings, see his bond revoked and immediately be jailed in Chicago. All this was uncertain at the time of mailing because Krecioch had not consented to a plea agreement. The DEA knew only that Krecioch was free on bond and residing at the address to which the notices were sent. There is no evidence that the DEA knew or should have known at the time of mailing that notice would be ineffective, and absent exceptional circumstances, written notice of forfeiture by certified mail to the claimant's residence satisfies due process even if the claimant does not receive actual notice as a result. See United States v. Clark, 84 F.3d 378, 381 (10th Cir. 1996); Sarit, 987 F.2d at 14-15. However, notice for Krecioch's weapons was inadequate because the DEA mailed it to his residence later, on September 8, when the DEA knew that Krecioch was jailed at the MCC and no longer living at his home address. On this basis, we vacate summary judgment on Krecioch's due process claim for his weapons but affirm summary judgment on his claims for the automobiles and cash.

Krecioch cites United States v. Cupples, 112 F.3d 318, 320 (8th Cir. 1997), in which the Eighth Circuit required actual notice when "the government is prosecuting someone who is actively contesting the criminal charges against him, including a count of the indictment seeking forfeiture." He insists that the DEA could have easily effected actual notice by having the DEA officer at his August 12 hearing give him actual notice. We agree that this would have been preferable for due process purposes, but due process "does not, of course, require that authorities use the best possible method of

notification." Towers v. City of Chicago, 173 F.3d 619, 628 (7th Cir. 1999). Krecioch was entitled only to notice "reasonably calculated, under all the circumstances, to apprise" him of the forfeiture actions. Mullane, 339 U.S. at 314. To the degree that Cupples requires actual notice even when the claimant is free and available at his home address, we disagree because due process requires only that the government reasonably believed that notice would be likely to reach Krecioch. See Schluga, 101 F.3d at 63. In the absence of bad faith, the forfeiture notices sent by certified mail on August 10 to his then-current address, received by his family members and combined with newspaper publication, were sufficient to satisfy the Mullane standard for notice.

## III.  Conclusion

For the foregoing reasons, we Affirm summary judgment with respect to the forfeiture of the automobiles and cash but Reverse summary judgment with respect to the three weapons seized from Krecioch's home on July 8, 1992, and Remand for further proceedings.