**Wale OYEKOYA, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 00 CIV. 2596 SAS.**

United States District Court, S.D. New York.

Aug. 1, 2000.

Wale Oyekoya, Great Meadow Correctional Facility, Comstock, NY, pro se.

Marc A. Weinstein, Assistant United States Attorney, United States Attorney's Office for the Southern District of New

York, New York, NY, for the United States.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiff Wale Oyekoya seeks the return of funds seized and forfeited by the United States Secret Service. Oyekoya contends that the Secret Service lacked probable cause to seize the funds and that he received inadequate notice of the forfeiture proceedings. The Government argues that it provided reasonable notice to Oyekoya, who opened the relevant bank accounts under an assumed name.

As explained below, the unique procedural posture of this case prevents me from determining at this time whether the Government provided reasonable notice to Oyekoya. As a result, I am unable to rule on Oyekoya's motion for the return of his property. Construing the Government's opposition to Oyekoya's motion as a motion to dismiss, however, that motion is denied. I have scheduled a conference in order to discuss the future course of this case.

## I. BACKGROUND

### A. Facts

Sometime during 1996, the Secret Service and the White Plains Police Department began investigating a scheme involving eleven counterfeit checks, totaling $467,456.38, drawn upon a corporate account at a NationsBank branch in Florida. *See* 10/1/99 Declaration of Michael Centrella, Special Agent of the United States Secret Service ("Centrella Decl.") ¶¶ 2–3. According to the Secret Service, the investigation traced approximately $85,450.00 in proceeds from the scheme to three accounts located at banks in White Plains. *Id.* ¶ 3. Two accounts, located at the White Plains branch of the Bank of New York ("BONY"), were opened in the name of Evan Goldberg. *Id.* ¶¶ 4, 6. The third account, located at the Mamaroneck Ave-

nue branch of Citibank, was opened by a man named Evan Goldberg in the name of City Computer. *Id.* ¶ 4; *see also* 8/15/96 Supplementary Detective Report, attached to Claimant's Reply ("Supplementary Detective Report"). On August 30, 1996, Agent Centrella submitted an affidavit in support of the government's application for seizure warrants of the three accounts. Centrella Decl. ¶ 6. Magistrate Judge Henry Pitman issued seizure warrants that same day. *Id.* On September 3, 1996, Agent Centrella seized a total of $83,-801.05: $24,497.24 and $14,400 from the two BONY accounts and $44,903.81 from the Citibank account. *Id.* ¶ 5.

On October 6, 1996, the Secret Service sent written notice of the seizure of the three accounts to Evan Goldberg, One Steven Street, Suite 3, White Plains, New York 10606 (the "Steven Street address"). *Id.* ¶ 6. The Steven Street address was the address listed for Evan Goldberg on each account. *Id.* In addition, Goldberg provided the Steven Street address as the business address for City Computer when he opened the Citibank account. *See* Supplementary Detective Report. The written notices sent to Goldberg at the Steven Street address were returned to the Secret Service undelivered. Centrella Decl. ¶ 7. The Secret Service also published notices of seizure with respect to the three accounts in the New York Times for three consecutive weeks in October. *Id.* ¶ 8. On January 13, 1997, after Goldberg had failed to file a claim and the time to do so had expired, the funds were forfeited to the United States. *Id.* ¶ 9.

From September 12, 1996 through September 12, 1997, Oyekoya was imprisoned at Fort Dix Correctional Facility based on a prosecution originating in the Eastern District of New York. *See* Claimant's Reply at 2–4.[1] On October 31, 1997, the White Plains Police Department arrested Oyekoya on charges related to the counterfeit check scheme that provided the basis for the seizures. Centrella Decl. ¶ 10.

---

1. Fort Dix does not receive the New York Times. *Id.* at 5.

Oyekoya was arrested because, sometime before October 1997, the White Plains Police Department learned that Oyekoya was "Evan Goldberg," the person who opened the relevant bank accounts. On January 8, 1999, Oyekoya was convicted in Westchester County Court on charges of: forgery of a public record; forgery of a deed, will, or codicil; criminal possession of a credit card in the fourth degree; criminal impersonation in the second degree; and making false entries on a business record. *Id.* That same day, Oyekoya was sentenced to forty-two months to seven years' imprisonment. *Id.*

### B. Procedural History

On July 12, 1999, Oyekoya filed a motion pursuant to Federal Rule of Criminal Procedure 41(e), seeking the return of the seized bank accounts. *See* Order, *Oyekoya v. United States,* 00 Civ. 2596 (Mar. 10, 2000). In filing this motion, Oyekoya used the docket number of an unrelated criminal case then pending before Chief Judge Michael Mukasey. *See id.* On August 4, 1999, Chief Judge Mukasey referred the motion to the Part I Judge because the motion was unrelated to his pending criminal case. *See id.* On August 26, 1999, Judge Denny Chin, sitting as the Part I Judge, directed the parties to brief the motion. *See id.* The parties completed their briefing, which included documents and affidavits, on October 13, 1999. *See id.* On March 10, 2000, then-Chief Judge Griesa issued an order construing Oyekoya's Rule 41(e) motion as a new civil action and directing Oyekoya to submit the requisite filing fee or apply to proceed in forma pauperis. *See id.* Oyekoya then submit-

ted an application to proceed in forma pauperis, which was granted.

On April 4, 2000, Oyekoya filed a motion for an immediate hearing pursuant to *United States v. Monsanto,* 924 F.2d 1186 (2d Cir.1991). The case was assigned to my docket on May 12, 2000. On June 2, I held a conference attended by Assistant United States Attorney Marc Weinstein. At that conference, I denied Oyekoya's motion for a *Monsanto* hearing. A copy of the transcript of that hearing was sent to Oyekoya.[2] I now turn to Oyekoya's motion for return of the seized bank accounts.

## II. DISCUSSION

■ Because Oyekoya's motion was construed as a new civil action, Oyekoya never filed a complaint in this case. For the sake of efficiency, I will construe Oyekoya's motion as his complaint, and the Government's brief in opposition as a motion to dismiss that complaint. "[P]ro se complaints are held to less stringent standards than formal pleadings drafted by lawyers, and are to be construed liberally on a motion to dismiss. Thus, a pro se complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Santiago v. Meinsen,* 89 F.Supp.2d 435, 438 (S.D.N.Y.2000) (quotation marks and citations omitted).

■ Under 18 U.S.C. § 981(a)(1)(C) the United States may forfeit property derived from proceeds traceable to a violation of 18 U.S.C. § 1344, the federal bank fraud statute. Pursuant to this provision, the Secret Service first seized and then forfeit-

---

**2.** On June 19, 2000, Oyekoya responded to the transcript of that hearing. *See* June 19, 2000 Letter from Oyekoya to the Court ("June 19 Letter"). In his response, Oyekoya sought to correct a number of allegedly erroneous statements concerning the underlying facts of this case. *See id.* Because the corrections apply to the notice and probable cause issues, not the request for a *Monsanto* hearing, his response does not cause me to reconsider my denial of a *Monsanto* hearing. Nevertheless,

I have considered the factual allegations in Oyekoya's response in deciding this motion. *See Samuels v. Stone,* 98 Civ. 776, 1999 WL 624549, at *5 n. 1 (S.D.N.Y. Aug.17, 1999) ("Although a court should generally refrain from considering matters outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss, the mandate to liberally construe pro se pleadings makes it appropriate to consider the facts set forth in plaintiff's opposition papers.").

ed Oyekoya's bank accounts. Oyekoya argues that the Secret Service lacked probable cause to seize his bank accounts and that he received inadequate notice of the forfeiture. Although federal courts lack jurisdiction to review the merits of an administrative forfeiture decision, they can consider whether the government provided legally adequate notice of the forfeiture:

> The overwhelming weight of authority supports the position that a federal court lacks jurisdiction to review the merits of administrative forfeiture decisions. Nevertheless, an exception to this general rule lies if the property is taken accidentally, fraudulently, or improperly. Put another way, if an administrative forfeiture is procedurally deficient, the court has jurisdiction to correct the deficiency. Accordingly, federal courts have jurisdiction to determine whether the government provided legally adequate notice of forfeiture.

*Weng v. United States*, 137 F.3d 709, 713 (2d Cir.1998) (quotation marks and citations omitted). Thus, this Court only can consider whether Oyekoya received adequate notice of the forfeiture.[3] If the notice was inadequate, then the Court can consider whether the Secret Service lacked probable cause to seize the bank accounts. *See Boero v. Drug Enforcement Administration*, 111 F.3d 301, 306 (2d Cir.1997) ("[W]hen the government is responsible for a known claimant's inability to present a claim, through the government's disregard of its statutory obligation to give notice (or otherwise), a hearing on the merits is available in the district court.").

The standard for adequate notice is clear:

'Notice [must be] reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections ... [W]hen notice is a person's due...[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt.'

*Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314–15, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). The Secret Service contends that it provided adequate notice by sending notices of forfeiture to the address provided by Oyekoya, posing as "Evan Goldberg," when he opened the accounts—the Steven Street address. The Secret Service also published notice of the forfeiture in the New York Times. Oyekoya makes several arguments as to why notice was inadequate. For the following two reasons, one suggested by Oyekoya and the other revealed in my review of the record, I cannot state that "it appears beyond doubt that [Oyekoya] can prove no set of facts in support of his claim" that the notice was inadequate. *Santiago*, 89 F.Supp.2d at 438. Accordingly, the Government's motion to dismiss Oyekoya's complaint is denied.

■ *First*, the parties dispute when the White Plains Police Department first learned that Oyekoya was "Evan Goldberg." Although both Oyekoya and the Government agree that a Special Agent of the Federal Bureau of Investigation (the "FBI Agent"), who was investigating a separate matter, recognized the person in a photograph entitled "Evan Goldberg" as Wale Oyekoya and informed the White Plains Police Department of that fact, they disagree about when that

---

**3.** The Government also argues that Oyekoya lacks standing to challenge the forfeiture because he never admitted that he was "Evan Goldberg." In his reply, however, Oyekoya made clear that he opened the bank accounts under the name "Evan Goldberg." As a result, I am satisfied that Oyekoya has standing to challenge the forfeiture. *See Mercado v. United States Customs Service*, 873 F.2d 641, 645 (2d Cir.1989) ("There must be some indication that the claimant is in fact a possessor, not a simple, perhaps unknowing custodian, some indicia of reliability or substance to reduce the likelihood of a false or frivolous claim."). Any lingering doubt about Oyekoya's standing is erased by the fact that the White Plains Police Department arrested Oyekoya for actions taken in connection with the seized bank accounts.

identification took place. The Government states that the identification took place in the fall of 1997, "[a]pproximately one year after the seizure." Centrella Decl. ¶ 10. Oyekoya, on the other hand, alleges that the identification took place in late August or early September 1996, before the forfeiture process. *See* Claimant's Reply at 5 ("The government agent, Mr. Richard Reinhardt from FBI that assisted the State to identify claimant through the State identification photographs on September 1996 knew claimant's home address and his other business office address ...."); June 19 Letter at 2 ("Mr. Rhinehardt was able to know through the three photographs that it was definitely claimant, Wale Oyekoya[,] as the same person as Evan Goldberg that opens the accounts [sic] at White Plains. With the identification completed by the law enforcements [sic], the three accounts were seized on September 3, 1996.").[4]

If the White Plains Police Department knew that Oyekoya was "Evan Goldberg" during the forfeiture process, the next question is whether the knowledge of the White Plains Police Department can be imputed to the Secret Service. *See United States v. Rodgers*, 108 F.3d 1247, 1251 (10th Cir.1997) ("Where property is initially seized by state authorities, and then turned over to the federal government for federal forfeiture of that property, it is reasonable to expect the federal government to obtain from the seizing authority whatever evidence it may have concerning the whereabouts of the defendant."); *see also Bye v. United States*, 105 F.3d 856, 857 (2d Cir.1997) ("[W]e continue to be mystified as to why an agency of the United States Department of Justice seeking to give constitutionally adequate notice could not determine the current whereabouts of a person who is in the custody of another agency of the same Department."). These circumstances require a more detailed understanding of the level of cooperation between the White Plains Police Department and the Secret Service than is provided by the submissions to date.

If the Secret Service knew that Oyekoya was "Evan Goldberg" during the forfeiture process, there is no question that it was required to notify him. *See Weng*, 137 F.3d at 713 ("[W]hen notice is a person's due ... [t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt.") (quotation marks and citation omitted). That analysis does not change because Oyekoya was incarcerated. *See Weng*, 137 F.3d at 713 ("Courts have several times commented on the obligation on government, when it seeks to give notice of forfeiture to one it knows to be in its custody, to take the trouble to ascertain the place of confinement."); *Boero*, 111 F.3d at 307 ("Boero was a prisoner in custody, having been transferred to his place of incarceration directly from a federal facility, and notice could easily have been given to him."). In addition, that analysis is not affected by the fact that Oyekoya gave a false name when he opened the relevant bank accounts. *See Olivo v. United States*, 96 Civ. 2620, 1997 WL 23181, at *5 (S.D.N.Y. Jan.22, 1997) (government should have sent notice to plaintiff's real name, as well as his alias, because "the government was fully aware of plaintiff's real name"). Because these unresolved factual issues prevent this Court from determining whether Oyekoya received adequate notice, the Government's motion to dismiss is denied.

*Second,* even if the Secret Service did not know that Oyekoya was "Evan Goldberg" until the forfeiture process was complete, the record reveals the existence of a potential alternative address for "Evan Goldberg." The Supplementary Detective Report, provided by Oyekoya in his reply papers, indicates that Oyekoya "presented a New York State Identification Card in the name of Evan Goldberg,

---

4. The Government does not provide the name of the FBI Agent, but I assume that Oyekoya correctly identified Agent Reinhardt as the person who made the photo identification.

dob. 2/4/56 of 2967 Ocean Avenue # 19 Brooklyn New York 11235" when he opened the Citibank account. Supplementary Detective Report. Although Oyekoya does not argue that he received inadequate notice because the Secret Service failed to send the notice to the address on the ID card, I must construe his submissions liberally. *See Eison v. Kallstrom*, 75 F.Supp.2d 113, 116 (S.D.N.Y.1999) ("[T]he Supreme Court has instructed the district courts to construe pro se complaints liberally and to apply a more flexible standard in determining the sufficiency of a pro se complaint than they would in reviewing a pleading submitted by counsel.") (quotation marks and citation omitted). Because Oyekoya has alleged that he received inadequate notice and has provided the factual basis for this potential alternative address, the question arises as to whether the Secret Service reasonably should have sent notice to that address.

At this stage of the proceedings, I cannot determine whether the Secret Service knew about this address. For the reasons set forth above, I also cannot determine whether the knowledge of the White Plains Police Department can be imputed to the Secret Service.[5] Assuming the Secret Service knew or should have known about the address, I also cannot determine whether sending notice to that address would have been the type of notice " 'such as one desirous of actually informing the absentee might reasonably adopt.' " *Weng*, 137 F.3d at 713 (quoting *Mullane*, 339 U.S. at 314–15, 70 S.Ct. 652); *see also Small v. United States*, 136 F.3d 1334, 1338 (D.C.Cir.1998) ("[I]f the United States has some additional piece of information that a reasonable person would use to locate the claimant, it is obliged under *Mullane* to try again, unless it would be burdensome to do so."). Again, because of these unresolved factual questions, the Government's motion to dismiss must be denied.

The difficulties faced by the Court in resolving this motion arose from the tortured procedural history of this case. Having sorted through the issues and identified the areas requiring further factual development, a conference is necessary to determine the best way to resolve this case. Three alternatives come to mind. *First*, the Court could hold a hearing on the notice issue, with testimony from Agent Centrella and the FBI Agent, and reach a final conclusion. *Second*, if a hearing will be insufficient and discovery on the notice issue is required, the Court can set a scheduling order and solicit another round of motions, if appropriate, at the close of discovery. *Third*, the Government can concede that its notice was inadequate and turn to the question of whether the Secret Service had probable cause to seize the funds. *See Boero*, 111 F.3d at 306 ("[W]hen the government is responsible for a known claimant's inability to present a claim, through the government's disregard of its statutory obligation to give notice (or otherwise), a hearing on the merits is available in the district court.").

The parties should consider these alternatives in advance of the conference, that I have scheduled for August 15, 2000 at 4:30 p.m. Plaintiff is invited to submit his views in writing, and the Court will consider his submission at the conference. *See Hernandez v. United States*, 99 Civ. 4303, 2000 WL 744148, at *1–*2 (S.D.N.Y. June 8, 2000) (prisoner does not have a constitutional right to attend pretrial conference or participate by phone). A copy of the transcript from the conference will be sent to plaintiff.

## III. CONCLUSION

Because this Court has construed Oyekoya's motion for return of seized property (see CHASER document number 1) as his complaint in this action, the Clerk of the Court is directed to close the pending mo-

---

**5.** I note, however, that Agent Centrella stated in his declaration that the Secret Service "had no additional address for the account holder for the three accounts." Centrella Decl. ¶ 7.

tion but not to close this case. The Government's motion to dismiss Oyekoya's complaint is hereby DENIED. A conference is scheduled for August 15, 2000 at 4:30 p.m.

SO ORDERED: