**Darryl WHITING, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. CIV. A. 98–11907–REK.**

United States District Court, D. Massachusetts.

Nov. 30, 1998.

Darryl Whiting, U.S.P. Lewisburg, Lewisburg, PA, Pro se.

Richard L. Hoffman, United States Attorney's Office, Boston, for U.S., Respondent.

## Opinion

KEETON, District Judge.

### I. Pending Matters

The docket in this case shows the following filings that bear upon matters now pending for decision in this civil action:

(1) Motion for Return of Property (dated by movant at the bottom left, February 23, 1996, designated in two handwritten entries in ink of different colors and a stamped date, apparently by persons in the Clerk's office, as filed March 6, 1998, then docketed as Docket No. 13 in C.A. No. 95–11885–REK, and later filed as Docket No. 1 in C.A. No. 98–11907–REK on September 17, 1998);

(2) Motion for Leave to Amend Motion for Return of Property (dated by movant at the bottom left, August 10, 1998, identified by movant in his caption as "Remanded on Appeal No. 97–2033, stamped "FILED" in the Clerk's office August 13, 1998," and later filed as Docket No. 2 in C.A. No. 98–11907–REK on September 17, 1998);

(3) Motion for Relief from Judgment or Order pursuant to Fed. R. Civ. Pro. 60(b), (dated by movant at bottom left, August 10, 1998, stamped "FILED" in the Clerk's Office on August 13, 1998, and filed in C.A. No. 95–11885–REK as Docket No. 44);

(4) Motion to Extend Time for Government's Response to Darryl Whiting's Motions, (designated in the caption as meant for filing in C.A. No. 95–11885–REK, stamped "FILED" in the Clerk's office on August 19, 1998, docketed in that civil action as Docket No. 46, and later docketed as Docket No. 3 in C.A. No. 98–11907–REK on September 17, 1998);

(5) Procedural Order of the court, September 21, 1998 (originally designated in the caption as an order in C.A. 95–11885–REK and later redesignated as an order in C.A. No. 98–11907–REK and filed as Docket No. 4). This order recites that the Mandate of the Court of Appeals, certified and issued on September 17, 1998 vacates the order of dismissal entered in C.A. No. 95–11885–REK and remands that claim to this court for further proceedings. The order then states:

> Each of the parties may file, on or before October 20, 1998, a submission identifying issues of law or fact to be determined, any discovery requested, and a proposed schedule for further proceedings.

(6) United States Motion for Clarification or Further Extension of Time (Docket No. 5, filed September 23, 1998), attached to which is a copy of General Docket for First Circuit Court of Appeals No. 97–2033, and a document "Certified and Issued as informal mandate under F.R.A.P. 41(a) Sep. 17, 1998";

(7) Notice of Appearance and Change of Address of Assistant U.S. Attorney Richard L. Hoffman (Docket No. 6, filed October 19, 1998);

(8) United States' Submission Pursuant to Procedural Order Issued September 21, 1998 (Docket No. 7, filed October 19, 1998);

(9) United States' Opposition to Motion for Leave to Amend Motion for Return of Property (Docket No. 8, filed October 19, 1998);

(10) United States' Opposition to Motion for Return of Property (Docket No. 9, filed October 19, 1998);

(11) Memorandum of the United States in Response to Petitioner's Motion for Relief From Judgment Pursuant to Fed.R.Civ.P. 60(b) (filed as Docket No. 53 in C.A. No. 95–11885–REK, October 30, 1998);

(12) Petitioner's Reply to Government Opposition to Motion for Return of Property (Docket No. 10, filed November 9, 1998);

(13) United States' Reply Memorandum in Opposition to Motion for Return of Property (Docket No. 12, filed November 16, 1998);

(14) United States' Reply Memorandum in Opposition to Motion for Leave to Amend Motion for Return of Property (Docket No. 13, filed November 16, 1998).

### II. Procedural Issues

#### A. Docket Issues

The first matter to which I give attention is untangling a procedural snarl.

The Clerk has acted appropriately and in conformity with the ordinary practice in this district in treating the Motion to Return Property (Docket No. 1) as a petition initiating a new civil action that concerns only the controversy over Darryl Whiting's formal request for return of property, which was remanded by the Court of Appeals for consideration by this court on the merits.

As to other matters (including but not limited to Docket Nos. 44 and 53 in C.A. No. 95–11885–REK) before this court in the earlier Civil Action, they are closed by the statement in the Mandate, "The judgment [of the district court] is otherwise affirmed in accordance with the opinion [of the Court of Appeals] filed this date [June 26, 1998]."

The government argues in its separately filed Opposition to Motion for Leave to Amend Motion for Return of Property that this court should deny Darryl Whiting's motion for leave to amend unless the court decides on the merits to order a return of property. Though understanding government counsel's concern that failure of the Government to make this procedural contention might later be held to be a bar to its right to a hearing and decision on the merits, I conclude that a permissible and better way to get to the merits without becoming involved in a complicating procedural snarl is to allow the motion for leave to amend, making clear that this is strictly and only a procedural ruling without my having yet determined any issue bearing upon the merits when making it. My ruling on Docket No. 2 allows leave to amend to this limited extent, and not in any other respect. Thus, for example, insofar as the motion for leave to amend may be interpreted as asserting that petitioner has a federal constitutionally protected right to procedural due process that is not subject to any use-or-lose principle, that matter is addressed not in this ruling allowing amendment but in the consideration of the merits of his claims in Part V of this opinion.

## B. The Procedural Posture of this Case

Because it is not immediately clear from the submissions, I will address here precisely what this "case" is about.

Petitioner's Motion for Return of Property (Docket No. 1) seeks the return of two rings (each ring consisting of gold and diamond) that were seized by the government from Petitioner's fiancee, Dierdra McGraw, and forfeited by an administrative forfeiture in July, 1991 (see Part IV). This property was the subject of Petitioner's Motion for Return of Property (Docket No. 13 in C.A. No. 95–11885–REK, converted to Docket No. 1 in C.A. No. 98–11907–REK), as evidenced by the Affirmation in Support (Docket No. 14 in C.A. No. 95–11885–REK). Thus, the issue of the rings was the only issue that was before the First Circuit in the appeal of C.A. No. 95–11885–REK (*Whiting v. United States of America*, No. 97–2033, slip op. (1st Cir. June 26, 1998).)

Petitioner's Motion for Leave to Amend Motion for Return of Property (Docket No. 2 in C.A. No. 98–11907–REK) seeks to amend the Motion for Return of Property (Docket No. 1 in C.A. No. 98–11907–REK) to add certain real and personal property (see Part IV) to the list of items Petitioner seeks to have returned to him. This property he seeks to add was seized in a civil forfeiture proceeding before Judge Skinner of the United States District Court for the District of Massachusetts in C.A. No. 90–12979 in which a default judgment was entered against Petitioner in July, 1991. The Motion for Leave to Amend represents the first time that Petitioner has sought judicial review of that forfeiture.

## III. Petitioner's Request for an Evidentiary Hearing

Petitioner seeks an evidentiary hearing on the pending matters. (Docket No. 1). Petitioner has not provided the court with a showing of legal and factual grounds for reasonably expecting that the "evidentiary hearing" will produce additional evidence, beyond that already of record in the proceeding, likely to affect the outcome. Evidentiary hearings need not be held in the absence of a proffer of specific evidence that will be material to the outcome of the case. *See United States v. Grant*, 114 F.3d 323, 327 (1st Cir. 1997) ("More fundamentally, Grant made no proffer regarding any possible, let alone rele-

vant or material, evidence that would be brought forward at an evidentiary hearing. Without a reason to believe that any benefit would derive from convening an evidentiary hearing, the district court surely did not abuse its discretion in refusing Grant's request."). In this case, I am convinced that no need for an evidentiary hearing or for discovery or disclosure exists because it is not reasonable to believe, based upon the record, that any additional material evidence will be forthcoming.

## IV. Factual Background

The following time-line of events, relevant both to the administrative forfeiture of the rings and to the civil forfeiture (C.A. No. 90–12979), has been culled from the submissions.

On December 11, 1990 (and again on April 11, 1990), Petitioner was indicted and charged with conspiracy to distribute cocaine, distribution of cocaine, supervising a criminal enterprise, and money laundering, in violation of 21 U.S.C. §§ 846, 841(a)(1), 848, and 18 U.S.C. § 1956 respectively. (Docket No. 8, pp. 1–2).

On December 12, 1990, the United States filed a civil forfeiture complaint (in C.A. No. 90–12979) against real estate located at 48 Geneva Avenue, Roxbury, Massachusetts and certain personal property that Petitioner lists as follows:

1. One (1) Boxing ring
2. Eight (8) pairs of boxing gloves
3. Two (2) pool Tables
4. Four (4) Arcade machines
5. Two Ping pong tables
6. One (1) Walk throug[h] metal detect[o]r
7. Two (2) hand held metal detect[o]rs
8. Four walkie talkies and recharger
9. Two (2) record turn tables
10. Six (6) stereo speakers
11. One (1) 24 track equalizer
12. One (1) Music mixer machine
13. One (1) Sound machine
14. One (1) Electrical key board
15. One (1) Tandy computer
16. One (1) Ice machine
17. Two (2) Popcorn machines
18. Two (2) Frank machines
19. Two (2) Electric grills
20. One (1) Speed bag
21. Two (2) heavy bags
22. Three (3) Weight lifting sets
23. Eight (8) Gym mats
24. [T]wenty (20) Pairs of R.Skates
25. Twenty (20) Martial arts suits
26. Twenty (24)[sic] Bar stools
27. Eight (8) booth tables
28. Eight (8) Drinking tables
29. One (1) leather sofa
30. One (1) Office desk
31. One (1) four wheel off road vehicle

Docket No. 2 at pages 1–2.

On the same date, Judge Skinner issued a Warrant and Monition directing that notice of the forfeiture of 48 Geneva Ave. and the personal property (listed above) be published in a local newspaper and that the complaint and notice of the forfeiture be sent by certified mail to Petitioner. The United States asserts that notice was published in the Boston Globe and notice was sent by certified mail to Petitioner's home (returned unexecuted), and to the Deer Island House of Correction, which notice was accepted by an employee of the Deer Island House of Correction. No record exists as to whether Petitioner in fact received this notice. (Docket No. 8, Tab A, ¶ 4).

On December 21, 1990, in a hearing before Magistrate Judge Robert Collings of the United States District Court for the District of Massachusetts, in relation to Petitioner's ability to afford counsel, the court discussed with Petitioner and the Assistant United States Attorney the property of which the United States was seeking forfeiture, including 48 Geneva Avenue. (Docket No. 8, Tab B, p. 14).

On March 12, 1991, Petitioner's two rings were seized from Petitioner's fiancee, Deirdra McGraw, from her apartment in New York City and taken into custody by the U.S. Drug Enforcement Administration (DEA). (Docket No. 10, p. 1).

On March 28, 1991, the United States moved for default in C.A. No. 90–12979 and served notice of the default by certified mail to the Plymouth County House of Correction. The notice was accepted by an employee of that institution. No record exists as to whether Petitioner in fact received that notice. (Docket No. 8, Tab A, ¶ 6). Plymouth County House of Correction records, however, indicate that Petitioner was incarcerated there at the time this notice was received.

(Docket No. 9, Ex. C). Notice was also filed upon Petitioner's attorney, who was representing Petitioner in the criminal case. (Docket No. 8, Tab A, ¶ 6).

On April 24, 1991, at another hearing in front of Magistrate Judge Robert Collings at which Petitioner was present, the subject of the forfeiture proceedings against the 48 Geneva Avenue again arose. (Docket No. 8, Ex. C, p. 11).

In June, 1991, the DEA sent notice of the seizure and intended administrative forfeiture of the two rings by certified mail to Petitioner at his home address. This copy of the notice was returned undelivered. The DEA also sent a copy of this notice to Deirdra McGraw in New York City. This copy also was returned undelivered. The DEA also sent a copy of this notice to Petitioner at Plymouth House of Correction. This copy was accepted by an employee at that institution. (Docket No. 9, Exs. 2,4,6). Plymouth House of Correction records indicate that Petitioner was incarcerated there at the time this notice was received. (Docket No. 9, Ex. C). The United States also published notice of the administrative forfeiture of the rings in the USA Today newspaper on June 12, 19, and 26 of 1991. (Docket No. 9, Ex. 7).

On July 8, 1991, Judge Skinner entered a Default Judgment and Order of Forfeiture. (Docket No. 8, Tab A, Ex. 3).

On July 22, 1991, because neither Petitioner nor anyone else had filed a claim to the rings, the rings were declared forfeited. (Docket No. 9, Ex. 8).

On July 24, 1991, a federal jury convicted Petitioner on various of the counts listed above. (Docket No. 9, p. 6).

On April 20, 1992, Petitioner sent a letter to a "Ms. Brown" (Docket No. 10, Ex. H), presumably the Roberta Brown who filed an affidavit attached to Docket No. 8, who is an Assistant United States Attorney, stating that he had just learned from a local newspaper that his property at 48 Geneva Ave. had been forfeited. (Docket No. 10, Ex. H).

On July 9, 1992, Petitioner sent a letter to the Assistant United States Attorney who had prosecuted him in his criminal case, Paul Kelly (Kelly), seeking the return of the two rings. (Docket No. 10, Ex. B).

On July 20, 1992, Kelly wrote back to Petitioner informing Petitioner that his rings were the subject of forfeiture and that Petitioner should contact Special Agent Peter Murphy (Murphy) at the DEA. (Docket No. 10, Ex. C).

Because Petitioner did not know Murphy, he asked his counsel to contact Murphy about the rings. (Docket No. 10, p. 2). His counsel failed to do so.

On November 26, 1995, Petitioner, having discovered the address of the DEA on the original subpoena for the rings, sent a letter to Murphy. (Docket No. 10, Ex. D).

On December 27, 1995, Murphy sent a letter to Petitioner explaining that the rings had already been forfeited. (Docket No. 10, Ex. E).

As a final note, the United States has submitted the affidavit of Officer Anthony Tomasello (Docket No. 9, Ex. D), in which Tomasello states that he was the officer in charge of mail at the time that the notices were sent to Petitioner at Plymouth County House of Correction. He details the usual procedure in the following way:

My routine practice as PCHC Mail Officer, after receipt of certified mail for a PCHC prisoner, was to bring the mail back to PCHC, and then to fill out a Sheriff's Department certified mail form. I would then inform the prisoner that he had received the certified mail, and I would have the prisoner sign the certified mail form with respect to the received item. After the prisoner had signed the certified mail form, I would open the mail envelope in the prisoner's presence to check for contraband, and I would then leave the mail with the prisoner. At the end of this process, I would file the completed certified mail form in the PCHC mail room.

(Docket No. 9, Ex. D, p. 2). Tomasello also states in that affidavit that he does not recall receiving the notices for Petitioner in 1991, that he has no reason to believe that the procedure outlined above was not followed in Petitioner's case, and that the records of Petitioner's having received the mail cannot

be located and might have been lost when the facility changed its location in 1994. (Docket No. 9, Ex. D, p. 2).

## V. Issues Bearing on the Merits

### A. The Administrative Seizure of the Rings

21 U.S.C. § 881(a) provides for the administrative forfeiture of property or money that is traceable to illegal exchanges in controlled substances. *Id.* § 881(a)(6). Section 881(d) states that such a seizure is to be accomplished in accordance with the mandates of the customs laws, 19 U.S.C. § 1600 *et seq.* Customs laws provide for the forfeiture of property up to $500,000 without judicial involvement. 19 U.S.C. § 1607. The law requires the United States to publish notice of the intended forfeiture once a week for three weeks and to send notice to any party who appears to have an interest in the property. *Id.* § 1607(a). A claimant then has 20 days (after the first publication) to file a claim and a cost bond. 19 U.S.C. § 1608. The claimant's failure to follow this procedure results in the forfeiture of the property. 19 U.S.C. § 1609.

District courts have jurisdiction under 28 U.S.C. § 1331 to examine the process to ensure that the United States did not violate the claimant's right of due process by failing to provide the claimant with adequate notice of the forfeiture. *See United States v. Giraldo,* 45 F.3d 509, 511 (1st Cir.1995).

Precedents are not entirely in agreement as to what constitutes sufficient notice. Petitioner relies upon *Weng v. United States,* 137 F.3d 709 (2d Cir.1998), in which the Second Circuit held that the Government's notice by certified mail upon a claimant in a jail with no substantiation that the claimant was at that jail when the mail was delivered (the only evidence was to the contrary) was not sufficient process. *See id.* at 713–14. The court in *Weng* held that due process requires, when a federal claimant is in federal custody, actual notice. *See id.* at 714.

*Weng* does not represent the law of the First Circuit. Rather, in this circuit, due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Giraldo,* 45 F.3d at 511 (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). Judges of this district have held that this standard does not require actual notice. *See, e.g., United States of America v. One Parcel of Land,* No. CIV.A. 94–40137–NMG, 1997 WL 567945, at *2 (D.Mass. Sept.4, 1997) ("[I]t is established that due process does not require that a potential claimant have actual notice of a civil forfeiture action so long as the government acted reasonably in attempting to give such notice.")(holding that service by certified mail upon attorney and upon claimant at state prison where claimant was incarcerated was sufficient).

Courts of other circuits also have held that due process does not require actual notice in forfeiture cases. *See, e.g., United States v. Real Property,* 135 F.3d 1312, 1315 (9th Cir.1998)(holding that where government published notice of forfeiture and sent certified mail to defendant at jail where defendant was incarcerated and jail had procedure in place for ensuring that inmates received certified mail and no other evidence existed that defendant did not in fact receive the mail besides his "own bald declaration," notice was sufficient.), *United States v. Clark,* 84 F.3d 378, 381 (10th Cir.1996)(FBI's mailing notice to defendant at jail where he was incarcerated was sufficient).

 Guided by the Supreme Court's decision in *Mullane* and by decisions within the First Circuit, I conclude that actual notice is not required. What is necessary is that the government take steps "reasonably calculated, under all the circumstances, to apprise interested parties of the action." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). In the circumstances of this case, including the fact that the Petitioner was in custody, it was necessary that the United States send him notice at the prison where he was incarcerated. The record indicates that this happened (certified mail was accepted for Petitioner at the Plymouth House of Corrections in June, 1991 and the prison records indicate

that Petitioner was incarcerated there at that time—Docket No. 9, Exs. 4 and C). Also, the United States published notice in a national newspaper once per week for three weeks and attempted to serve notice at Petitioner's last-known address and at the address of his fiancee. For these reasons, I determine that the United States' efforts were reasonably calculated to apprise Petitioner of the forfeiture of his rings, and I therefore determine that due process was satisfied. The Petitioner's Motion for Return of Property is denied.

■ I conclude also, as a separate and independent ground for the denial of Petitioner's Motion, that the doctrine of laches applies to forfeiture matters such as this. *See United States v. Mulligan,* 178 F.R.D. 164, 166–67 (E.D.Mich.1998). The elements of the applicable test for laches are (1) an unreasonable delay, and (2) prejudice to the opposing party. *See McKinney v. Waterman S.S. Corp.,* 925 F.2d 1, 2 (1st Cir.1991). The burden in a case such as this one is upon the respondent because the statute-of-limitation period had not run by the time Petitioner filed his claim in 1996. *See id.*

■ Petitioner's delay was unreasonable no matter how the delay is viewed. The rings were seized in 1991, yet he waited until 1996 (when the first motion for return of property was filed in C.A. No. 95–11885–REK) to seek judicial redress. Even if we consider the period to run from July 20, 1992, when Petitioner first learned (he claims) in the letter from Kelly that his rings had been the subject of forfeiture, Petitioner waited almost four years to seek judicial redress. Furthermore, Petitioner proffers unacceptable excuses for the delay. He blames his counsel for failing to make contact with Murphy. He also asserts that he did not know the address of the DEA, when in fact, that address was on the original subpoena for the rings in his fiancee's possession all along. Considering the totality of the circumstances, I determine that Petitioner's delay was unreasonable.

Furthermore, to allow this late claim over the government's challenge to the adequacy of excuses proffered by Petitioner would lead to prejudice to the United States in this case.

The Plymouth House of Corrections moved in 1994 and, as a result, we are unlikely ever to know whether a record of Petitioner's having received the notice sent via certified mail in 1991 existed. If Petitioner had brought an action for the return of the rings before 1994, the United States might have had access to proof by records that Petitioner in fact had received the notice.

Considering all the circumstances, I determine that laches bars Petitioner's motion.

**B. The Civil Forfeiture of the Real and Person Property in Civil Action No. 90–12979**

The Due Process Clause of the Fifth Amendment of the United States Constitution prohibits the government from seizing "real property without first affording the owner notice and an opportunity to be heard." *See United States v. James Daniel Good Real Property,* 510 U.S. 43, 46, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993).

■ For essentially the same reasons as those detailed above in relation to notice of the administrative forfeiture of the rings, I determine also that the notice Petitioner received regarding the civil forfeiture was sufficient. The record indicates that notice of the forfeiture was published in the Boston Globe, that notice of the civil action was sent via certified mail to Petitioner at the Deer Island House of Correction, and that notice of the default was sent via certified mail to Petitioner at the Plymouth County House of Correction while he was an inmate there. Notice in these ways was sufficient and Petitioner was afforded an opportunity to be heard, if he had chosen to challenge the action.

A second and independent ground for denying Petitioner's Motion to Amend is that the record indicates that Petitioner had notice in fact of the forfeiture proceeding. The transcript of a conference of December 21, 1990 in front of Magistrate Judge Collings recites:

> *THE COURT:* Okay, you say you own a two-story commercial building. What dwelling is that please?

*DEFENDANT WHITING:* 48 Geneva Ave. (phonetic).

*THE COURT:* And is that, Mr. Kelly, an asset that's the subject of a forfeiture?

*MR. KELLY:* It is, Your Honor.

(Docket No. 8, Ex. B, pp. 8–9). Again, on April 24, 1991, in another hearing before Magistrate Judge Collings at which Defendant was present, the Assistant United States Attorney Kelly stated:

> To my knowledge, Your Honor, the only civil forfeiture action which is pending is pending against the 48 Geneva Avenue (phonetic) property here in Boston; that is, what's known as the Crown Social and Recreation Hall (phonetic) of which Mr. Whiting is the majority owner, along with two other persons, I believe. That property was the subject of a civil forfeiture proceeding.

(Docket No. 8, Ex. C, p. 11). Defendant's assertion that he had never received notice in fact of the civil forfeiture action against the 48 Geneva Avenue property, in the face of these hearing transcripts, one of which occurred seven months and the other more than two months before default was entered, is contradicted by his own recorded admissions. When a person has notice in fact of a proceeding, his claim based on asserted failure of the government, after good faith efforts, to provide him with written notice ordinarily lacks merit. *See U.S. v. Approx. 2,538.85 Shares of Stock,* 988 F.2d 1281, 1285 (1st Cir.1993)(objection of claimant who had knowledge in fact of forfeiture to failure of government to notify him by newspaper notice unavailing).

I conclude that Petitioner's claim that he did not have notice in fact of the forfeiture proceeding against him is without merit as a matter of law. The United States satisfied its obligation to take efforts reasonably calculated to apprise Petitioner of the pendency of the forfeiture. Also, under settled rules of *res judicata,* the default judgment entered against Petitioner in C.A. No. 90–12979, bars his motion in this case. *See Ortiz–Cameron v. Drug Enforcement Admin.,* 139 F.3d 4, 6 (1st Cir.1998). Therefore, whether formally amended or not, Petitioner's Motion for Return of Property lacks merit.

ORDER

For the foregoing reasons, it is ORDERED:

(1) For the reasons explained in Part II.A of the foregoing opinion, the Clerk is directed to dismiss from the docket in the closed C.A. 95–11885–REK all pending motions (Docket Nos. 44, 45, 46, and 52), because they have been transferred to C.A. 98–11907–REK or have become moot.

(2) Petitioner's Motion for Leave to Amend Motion for Return of Property (Docket No. 2) is ALLOWED only to the extent stated in Part II.A of the foregoing opinion. This is not a ruling on the merits.

(3) Petitioner's Request for an Evidentiary Hearing is DENIED.

(4) Petitioner's Motion for Return of Two Rings (Docket No. 1) is DENIED for the reasons stated in Part V.A of the foregoing opinion.

(5) Motion to Extend Time for Government's Response to Darryl Whiting's Motions (Docket No. 46) is DISMISSED as moot.

(6) United States' Motion for Clarification (Docket No. 5) is DISMISSED as moot.

(7) The Clerk is directed to enter forthwith on a separate document a Final Judgment as follows:

> For the reasons and on the conclusions stated in the Opinion of this date, it is ORDERED:
>
> > Petitioner's claims in Civil Action No. 98–11907–REK are DISMISSED with prejudice.