COLLOTON, Circuit Judge,
dissenting.
I conclude that the efforts of the Drug Enforcement Administration to provide notice of forfeiture proceedings to James Nunley were “reasonably calculated, under all the circumstances,” to apprise Nunley of the pendency of the action and to afford him an opportunity to object to the forfeiture. See Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The actions taken by the DEA were not “mere gesture[s],” but means that “one desirous of actually informing the absentee might reasonably adopt to accomplish it.” Id. at 315, 70 S.Ct. 652. Therefore, I would affirm the judgment of the district court.
Certified mail to Nunley at his place of incarceration was the principal means employed by the DEA to provide Nunley with notice of the forfeiture proceedings, and I believe it was sufficient. The DEA sent Nunley a notice of each disputed forfeiture proceeding by certified mail to the Washington County Detention Center where he was housed. The record shows that each mailing was received by an employee of the sheriffs office, with proof of signature presented. The motion for summary judgment, as supplemented, established that the jail operated under a written policy providing that incoming mail shall in no case be held longer than 24 hours, excluding weekends or holidays. The policy further dictated that “[distribution of incoming mail shall be done by a detention officer, directly to the receiving detainee’s hand,” and that mail shall not be “dropped on a table or other convenient place for each detainee to come and look for his own.” (Def.’s Supp. to Mot. for Summ. J., Ex. F, at 3).
*1141 As. of 2000, a “clear plurality” of the federal courts of appeals held that certified mail to a prisoner “is presumptively sufficient” to satisfy due process. Whiting v. United States, 231 F.3d 70, 76-77 (1st Cir.2000). In these circuits, absent evidence that the government knew that mail delivery in a particular prison was unreliable, or other special circumstances tending to rebut the presumption, the use of certified mail to the institution was thought “reasonably calculated” to afford notice. Id. at 76; see also United States v. 5145 North Golden State Blvd., 135 F.3d 1312, 1315-16 (9th Cir.1998); United States v. Tree Top, et al., No. 96-3757, 1997 WL 702771, at *2 (6th Cir. Oct.31, 1997) (per curiam) (unpublished); United States v. Clark, 84 F.3d 378, 381 (10th Cir.1996).
The Supreme Court, noting that “Courts of Appeals have reached differing conclusions about what the Due Process Clause requires of the United States when it seeks to provide notice to a federal inmate of its intention to forfeit property,” then granted certiorari to consider the question. Dusenbery v. United States, 534 U.S. 161, 166, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002). In Dusenbery, the Court held that “actual notice” to an inmate is not required, and that the government satisfies the Due Process Clause if its efforts are “reasonably calculated” to afford notice and an opportunity to object. In that case, the record showed that the FBI sent certified mail to an inmate at the facility where he was incarcerated. Under standard procedures, prison staff traveled to a post office daily to retrieve the mail, signed for all certified mail at the post office, transported the mail back to the prison, and entered the mail in a logbook. Another staff member then signed for the certified mail when it was removed from the mail room, and staff distributed the mail to the inmate during the institution’s “mail call.” The Court concluded that these procedures afforded due process, even assuming the inmate’s contention that additional procedures could have improved delivery to some degree. Id. at 172,122 S.Ct. 694.
The only apparent difference between the internal mail procedures described in Dusenbery and the procedures established in this case involves the logging of mail in and out of a mail room at the correctional facility. The federal prison in Dusenbery maintained such a log; the record in this case does not show whether the local jail kept such a record of certified mail. Du-senbery, however, did not purport to establish minimum procedures necessary to afford due process, and this variance does not strike me as constitutionally significant. More persuasiye is the view of the plurality, of pre-Dusenbery courts, and the only post -Dusenbery decision on point, Chairez v. United States, 355 F.3d 1099, 1102 (7th Cir.2004), that delivery of certified mail to the institution is presumptively sufficient to satisfy due process. And where, as here, the jail has a written policy requiring staff to transport mail “directly to the receiving detainee’s hand” within 24 hours of delivery, we have paore than delivery by certified mail and a presumption of sufficiency. We have an internal policy that mandates prompt personal delivery of mail to detainees, and no evidence from Nunley to raise a genuine question about the jail’s regular adherence to that policy. Under these circumstances, I believe the use of certified mail was reasonably adopted by a federal agency that was desirous of actually informing Nunley of the forfeiture proceedings.
To be sure, prisons are not post offices, and inmates are not like guests at a cheap hotel who might, at least theoretically, vote with their feet and move to another cheap hotel if mail service is faulty. But there is a presumption of regularity in the conduct of public officials, and “market forces” of a different sort are not entirely absent. If a *1142 jail regularly fails to comply with a policy on delivery of mail to inmates, then there will be negative consequences for the jailer. It will become known to government officials that mail service at the jail is unreliable. Such knowledge will preclude the use of certified mail to notice forfeiture proceedings, Chairez, 355 F.3d at 1102; Whiting, 231 F.3d at 77, thus increasing costs for other government agencies or interfering in particular cases with the ability of the federal government to forfeit property. This is not likely to sit well with federal agencies who provide valuable resources and assistance to local law enforcement officials, not to mention with voters who typically elect the sheriffs who oversee jails. It may even result in the loss of shared forfeiture proceeds by the local government. And as the First Circuit explained, it is not only the incentives of jailers that should be considered: “It is well to be realistic about the situation: given the incentives, inmate denials that mailed notice was actually received are doubtless much more common than misde-livery, and knowledge is probably widespread among defendants in drug cases that the government does look to harvest assets from drug dealers incident to criminal cases.” Whiting, 231 F.3d at 77.
The Washington County Detention Center undoubtedly could adopt written procé-dures to specify precisely which staff member is to retrieve inmate mail from the point of delivery and distribute it “directly to the receiving detainee’s hand.” The jail could institute a logbook to track who picks up and delivers the mail once it is received by the sheriffs office. And if the jail did not enhance its procedures, then the DEA could divert agents from investigative work to make hand deliveries of forfeiture notices to inmates. But the overriding message of Dusenbery, as I read it, is that the Due Process Clause does not require exacting scrutiny of intér-nal jail procedures for mail delivery, and the potential for- new procedures that would improve reliability does not necessarily demonstrate the infirmity of old ones. The standard is one of reasonableness. 534 U.S. at 170, 122 S.Ct. 694. On the undisputed record in this case, I conclude that the DEA’s use of certified mail addressed to Nunley, who was incarcerated at a facility that maintained an internal policy of delivering mail directly to a receiving detainee’s hand within 24 hours, was reasonably calculated to provide Nun-ley with notice. Therefore, I would affirm the judgment of the district court.